UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ROBERT NOVAK d/b/a Pets Warehouse, com.   CV 01 3566

                               Plaintiff,

    -against-                                  **AFFIDAVIT OF**
                                                        **CYNTHIA A. KOURIL**

ACTIVE WINDOW PUBLICATIONS, INC.,
MARK ROSENSTEIN, CYNTHIA POWERS,
DAN RESLER, JARED WEINBERGER,
THOMAS BARR, "JOHN DOE" and "MARY DOE",

                               Defendants.
------------------------------------------------------------------X

STATE OF NEW YORK )
                        :ss:
COUNTY OF SUFFOLK)

       CYNTHIA A. KOURIL, an attorney duly admitted and licensed to practice before the Courts of this jurisdiction, being duly sworn, deposes and says:

       1)     I am a member of Robert L. Folks & Associated, LLP, attorneys for Mark Rosenstein and Active Window Productions, Inc., miscaptioned as Active Window Publications", (hereinafter the AWP defendants).

       2)     I am fully familiar with the facts and circumstances relayed herein as they deal with the civil procedure matters of motion practice associated with this case.

       3)     This matter was commenced by Summons and Complaint on or about May 30, 2001.

       4)     Thereafter plaintiff engaged in a confusing barrage of service and/or filing of various unauthorized "amended complaints" which caused different defendants to be in possession of different versions of the Complaint.

5) This took some time and apparent effort to sort out the procedural morass created by plaintiff. It cost the AWP defendants otherwise unnecessary attorney time to review the file and docket sheet prior to each appearance so that an accurate report of the procedural posture could be made, a task that is normally performed by plaintiff's attorney. However, plaintiff in this case appears as a *pro se* litigant and was either unable to accurately report the status of his pleading service and of motions which he professed to have made but which were never served on the AWP defendants, nor appeared in the docket or file, or willfully misled the Court about the true procedural posture of the case during the first few months.

6) Once the issue of which version of the Complaint was the operative document was solved, the AWP defendants made a motion for expedited discovery on the narrow issue of whether or not Robert Novak, as an individual, was the true party in interest in this case or whether other parties should be substituted for Mr. Novak or added to Mr. Novak as additional plaintiffs.

7) Mr. Novak refused to turn over documentary information about closely held, Novak family controlled, corporations that used the "Pets Wharehouse" name; a name over which Mr. Novak claimed to have an individually owned copyright interest.

8) Mr. Novak also refused to turn over financial information relating to the manner in which he claims to be compensated for the licensing of this "trademark".

9) On August 28, 2002, the Court ordered plaintiff to turn over business certificates, corporate records and licensing agreements. Exhibit A.

10) On October 24, 2002, the AWP defendants were forced to make a motion to compel production from Mr. Novak. Exhibit B.

2

11) On December 5, 2002, that motion was granted. Exhibit C.

12) At the December 5, 2002 status conference, the Court admonished plaintiff for playing "cute" by claiming that he, Robert Novak, as an individual did not have particular documents, while clearly the documents were in the possession of, for example, his accountant. Exhibit D. Plaintiff was thereby falsely conflating actual physical possession will ownership and control of the documents. The Court admonished plaintiff:

> "But you realize that having said [that plaintiff does not have documents to produce] that should this matter ever come to the point of trial, that you would be **precluded** from offering any documents that you claim you don't have now."
> 
> Exhibit D, page 14, lines 21-25
> [emphasis added]

> "No, I think you're just trying to be a little bit cute and …. what I am suggesting to you is you tell me you don't have any documents because you are not an officer of the corporation. The suggestion is that somebody else has them. I just don't want you to be misled. If you don't produce them because you don't have them, fine but that [is] you're position.
> 
> But they don't come into evidence ever in this case. So, at trial, you don't call a secretary of one of the corporations who all of the sudden miraculously appears with the corporate documents.
> 
> Keep in mind your role in this case, Mr. Novak. You're the plaintiff. You started the lawsuit. The burden of proof is on you, okay? You've got a certain not only discovery obligations but you have other obligations. If you don't want to produce certain documents that are properly - - if they are properly called for, fine. But once you choose that pattern, they are not coming into evidence in this case."
> 
> Exhibit D, page 16, line 5
> -page 17, line 4

> "I read the deposition, okay? And throughout the deposition your answers were evasive, your answers attempted to do this very thing, draw fine line distinctions between whether it's me or someone else or this corporation or not.

> That is not how litigation is conducted in this courthouse. And should you continue in that and I get a report back from the special referee that you've done that, I'll impose sanctions, not only monetarily but I'll preclude the admission of evidence that you've been evasive about.
>
> Do we understand each other?"

The Court further warned plaintiff:

> "So, we're going to be here for years doing this and spending thousands of dollars but that's how you want to do it, do it. But we'll resolve it ultimately.
>
> And the ultimate resolution may be entirely different that what you think. I'm just warning you of that. If it is ultimately determined that this case is as frivolous as people are maintaining and I'm not suggesting it is because I don't know yet, but if it ultimately is determined, then you are going to bear the significant cost of this litigation."
>
> Exhibit D, Page 22, lines 10-21

13) By March 6, 2003, plaintiff was still not in compliance with the Court's order to compel production. The Court issued a further order compelling production and added to the list of documents to be produced, tax returns for the years covered in the Complaint. Exhibit E. The documents were to be produced by March 20, 2003. *Id.*

14) On March 25, 2003, my partner, Robert L. Folks, wrote to inform the Court that the plaintiff had not produced even a single document in compliance with this Court's March 6, 2003 order. Exhibit F.

15) On May 2, 2003, this Court had to order plaintiff to provide an errata sheet to his transcript. Exhibit G. The Court also set a June 20, 2003 deadline to bring on a motion for sanctions. *Id.*

16) After defendant served a motion for discovery sanctions, plaintiff filed a petition in bankruptcy to cause a procedural halt to the above captioned case.

17) On June 25, 2003, Bankruptcy Judge Stuart Bernstein dismissed that filing *sue sponte*. Exhibit H.

18) During the course of the proceedings before Judge Bernstein, the Bankruptcy Court found that

> "one, ... there is already a [Chapter] Eleven [case] open; [and] two, on the face of [plaintiff's] complaint, which I read, and the characterization in his pleadings, he is **seeking to use this court improperly**."
> Exhibit I, page 12, lines 10-15.

and

> "I view this as a case filed in bad faith ...",
> page 15, lines 15-16.

19. Mr. Novak was argumentative and refused to acknowledge the Court's ruling. Things deteriorated to the point where Judge Bernstein asked court personnel to call the U.S. Marshall to restore order. Exhibit I, page 17, lines 6-7.

20. On August 8, 2003, the Court awarded monetary sanctions against plaintiff in the value of the attorney time related to plaintiff's failure to appear.[1]

21. On December 12, 2003, the Court issued a decision and order granting defendant's motion for sanctions in the form of preclusion against plaintiff. This Court found:

> [T]he pro se plaintiff, Robert Novak, willfully avoids giving information and does not answer simple questions. The transcripts of his depositions demonstrate his evasiveness and attempts at "cleverness". His varied answers about the existence of relevant income tax returns also disturbs the Court.
> Exhibit K, page 2

---

[1] The Court later relented (Exhibit K, page 3) and revised this ruling which had the ironic consequence of costing defendant additional attorney time for the preparation of an affidavit of actual services, thereby exacerbating the damage to defendant.

5

22. At the Court's direction, on January 5, 2004, the AWP defendants submitted a "Statement of Outstanding Discovery and Anticipated Motions". Exhibit L.

23. Defendant's subsequent discovery requests were promulgated working off Exhibit L. Plaintiff has had knowledge of the information which defendants would seek to discover with regard to the allegations in the Complaint since January 2004.

24. After a delay while waiting for a decision on a motion to dismiss, this Court issued a scheduling order on September 9, 2008, which required completion of discovery by May 2009. Exhibit M.

25. The AWP defendants promulgated a Notice of Production of Documents. Exhibit N.

26. The requested documents were needed to prepare to depose Mr. Novak.

27) The AWP defendants did not have any idea of what other witnesses Mr. Novak intended to call at trial because Mr. Novak did not serve initial disclosure. Therefore, no deposition notices were served for the unidentified plaintiff's witnesses, if indeed there are any witnesses.

28) To this date, defendants have received no response whatsoever to Exhibit N, not a document, not an objection, nothing. Plaintiff has simply ignored his obligations with respect to this discovery demand.

29) Subsequently, the AWP defendants promulgated a set of Interrogatories, a set of Requests for Admissions, and a Request for Documents and Things Relating to Medical Records (with sample medical authorizations enclosed). Collectively, Exhibit O.

30) To this day the AWP defendants have received no response of any kind to those demands.

31)     On or about April 30, 2009, defense counsel received a facsimile transmission from plaintiff of an unsigned document titled "Plaintiff's Initial Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1)". For some unknown reason, the document was back dated to October 3, 2008. Exhibit P, pages 3 and 4.

32)     That document failed in almost every way to meet the requirements of Rule 26:

      a)  it was unsigned

      b)  it did not list other witnesses, yet purported to "resume the right to call others or different witnesses"

      c)  it did not describe discoverable documents or provide copies, yet purported to "reserve the right" to do so at some unspecified later time

      d)  it did not provide a computation of damages despite the fact that the defendant had already provided all the accounting information necessary for plaintiff to perform his computation in response to plaintiff's discovery demand

33)     The deficiencies of plaintiff's automatic disclosures were detailed for him in a letter from me dated May 7, 2009. Exhibit P.

34)     To this date, plaintiff has made no attempt to correct the deficiencies in his automatic disclosures, rendering them a nullity under Rule 26(g)(2).

35)     The AWP defendants are current in their discovery obligations, having answered by production or objected to each and every discovery demand promulgated by plaintiff. Defendants have provided thousands of pages of "Bates Stamped" documents arranged in binder form, along with detailed privilege logs. This production effort has cost thousands of dollars in attorney time and over $1,000.00 in reproduction costs.

36)     Plaintiff has produced nothing.

37) On May 19, 2009, at a conference before this Court, plaintiff was once again instructed by this Court about his obligations to produce.

38) Plaintiff complained that he had been busy reviewing the voluminous amounts of discovery produced by defendant in this case.

39) This Court admonished plaintiff that busy was no excuse.

40) Plaintiff said he would comply with defendant's discovery demands.

41) More than two additional months have elapsed since that representation and plaintiff has not produced one document, or objection, or one iota of information. Plaintiff has been utterly silent in total dereliction of his discovery obligations.

42) If this is not willfulness, it is hard to imagine what would satisfy that standard.

43) Attached hereto is an index to Exhibits A though P, which are bound separately.

44) For the foregoing reasons, it is apparent that plaintiff has, through his own actions and inactions, earned the dismissal of his Complaint.

_____
Cynthia A. Kouril (CAK-4899)

Sworn to before me this
13th day of August, 2009

_____

TERESA M. QUAIES
NOTARY PUBLIC STATE OF NEW YORK
QUALIFIED IN SUFFOLK COUNTY
NO. 01QU4713369
COMMISSION EXPIRES JULY 31, 2010

8

## **EXHIBITS**

| | | |
|---|---|---|
| A. | 08/28/02 | Order |
| B. | 10/24/02 | Motion by defendant to compel production from plaintiff |
| C. | 12/05/02 | Order, Motion to Compel granted |
| D. | 12/10/02 | Transcript of 12/05/02 hearing |
| E. | 03/06/03 | Order to plaintiff to supply documents, including tax returns, within fourteen days |
| F. | 03/25/03 | Letter from defendant requesting that judge order plaintiff to produce documents |
| G. | 05/02/03 | Order to plaintiff to serve his signed transcript and errata sheet by 05/03/03 |
| H. | 06/27/03 | Letter from Robert L. Folks re: Judge Bernstein observed on Record that Novak/bad faith |
| I. | 07/18/03 | Transcript of proceedings before Judge Bernstein |
| J. | 08/08/03 | Order. Plaintiff warned that failure to appear could result in dismissal |
| K. | 12/12/03 | Order of preclusion for plaintiff's failure to provide discovery Relating to true party in interest |
| L. | 01/05/04 | Statement of Outstanding Discovery and Anticipated Motions |
| M. | 09/19/08 | Judge Wall Discovery Scheduling Order |
| N. | 03/27/09 | Defendant's Document Demand |
| O. | 04/21/09 | Defendant's Combined Request for Discovery including Interrogatories, Requests for Admissions and Medical Record Authorizations |
| P. | 04/30/09 | Backdated Initial Disclosures and our letter re: same |

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ROBERT NOVAK d/b/a Pets Warehouse, com.        CV 01 3566

                                Plaintiff,

    -against-

ACTIVE WINDOW PRODUCTIONS, INC.,
MARK ROSENSTEIN, CYNTHIA POWERS,
DAN RESLER, JARED WEINBERGER,
THOMAS BARR, "JOHN DOE" and "MARY DOE",

                                Defendants.
-----------------------------------------------------------------X

========================================================================

## DEFENDANT'S MOTION FOR SANCTIONS

========================================================================


                                CYNTHIA A. KOURIL (4899)
                                ROBERT L. FOLKS & ASSOCIATES, LLP
                                Attorneys for Defendants Mark Rosenstein and
                                Active Windows Productions, Inc.
                                510 Broad Hollow Road, Suite 304A
                                Melville, New York 11747
                                (631) 845-1900


TO:    Robert Novak
         c/o Pets Warehouse
         1550 Sunrise Highway
         Copiague, New York 11726