UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ROBERT NOVAK d/b/a Pets Warehouse, com.                CV 01 3566

Plaintiff,

-against-

ACTIVE WINDOW PRODUCTIONS, INC.,
MARK ROSENSTEIN, CYNTHIA POWERS,
DAN RESLER, JARED WEINBERGER,
THOMAS BARR, "JOHN DOE" and "MARY DOE",

Defendants.
-------------------------------------------------------------------X

## MEMORANDUM OF LAW

CYNTHIA A. KOURIL (4899)
ROBERT L. FOLKS & ASSOCIATES, LLP
Attorneys for Defendants Mark Rosenstein and
Active Windows Productions, Inc.
510 Broad Hollow Road, Suite 304A
Melville, New York 11747
(631) 845-1900

TO:   Robert Novak
      c/o Pets Warehouse
      1550 Sunrise Highway
      Copiague, New York 11726

## STATEMENT OF FACT

This action was commenced by plaintiff on or about May 30, 2001. Defendants Mark Rosenstein and Active Window Productions, Inc. (miscaptioned by plaintiff as Active Windows Publications, Inc.) assert as a defense and counterclaim that this action was brought to harass and intimidate defendants and to make defendants an object lesson to anyone else who might voice legitimate complaints about Pets Warehouse's goods and services by forcing this, one man, small business to bear the substantial costs of defending in federal court across state lines. Plaintiff's behavior with respect to his discovery obligations amply supports defendant's claims of harassment and plaintiff's desire to drive up defendant's legal costs.

On July 2, 2002, this Court granted expedited discovery on the issue of true party in interest. Plaintiff refused to product documents in response to defendant's expedited discovery demands. Defendants were forced to the expense of a Motion to Compel. On August 28, 2002, this Court issued and order compelling plaintiff to release business certificates, corporate records and licensing agreements, and allowed defendant the opportunity to renew the motion as it pertained to tax returns or law suit information based upon expressed confusion relating to plaintiff's multiple versions of unauthorized "amended complaints". Exhibit A.

Thereafter, on October 24, 2002, defendants were again put to the expense of a Motion to Compel responsive answers to questions posed at plaintiff's deposition held on September 18, 2002 and renewal of the Motion to Compel disclosure of tax information. Exhibit B.

On December 5, 2002, "the motion to compel was granted, subject to production under the terms of the confidentiality order". Exhibit C.

During the course of the December 5, 2002 hearing, the Court observed that plaintiffs:

> " . . . constantly amending the complaint to add parties and allegations, some of which on their face are specious, might also be harassment."
>
> Exhibit D, page 11, lines 22 – 25

The Court also instructed the plaintiff about the consequences of failure to produce documents in discovery.

> "But you realize that having said [that plaintiff does not have documents to produce] that should this matter ever come to the point of trial, that you would be **precluded** from offering any documents that you claim you don't have now."
>
> Exhibit D, page 14, lines 21-25
> [emphasis added]

> "No, I think you're just trying to be a little bit cute and .... what I am suggesting to you is you tell me you don't have any documents because you are not an officer of the corporation. The suggestion is that somebody else has them. I just don't want you to be misled. If you don't produce them because you don't have them, fine but that [is] you're position.

> But they don't come into evidence ever in this case. So, at trial, you don't call a secretary of one of the corporations who all of the sudden miraculously appears with the corporate documents.

> Keep in mind your role in this case, Mr. Novak. You're the plaintiff. You started the lawsuit. The burden of proof is on you, okay? You've got a certain not only discovery obligations but you have other obligations. If you don't want to produce certain documents that are properly - - if they are properly called for, fine. But once you choose that pattern, they are not coming into evidence in this case."
>
> Exhibit D, page 16, line 5
> -page 17, line 4

> "I read the deposition, okay? And throughout the deposition your answers were evasive, your answers attempted to do this very thing, draw

fine line distinctions between whether it's me or someone else or this corporation or not.

That is not how litigation is conducted in this courthouse. And should you continue in that and I get a report back from the special referee that you've done that, I'll impose sanctions, not only monetarily but I'll preclude the admission of evidence that you've been evasive about.

Do we understand each other?"

The Court further warned plaintiff:

"So, we're going to be here for years doing this and spending thousands of dollars but that's how you want to do it, do it. But we'll resolve it ultimately.

And the ultimate resolution may be entirely different that what you think. I'm just warning you of that. If it is ultimately determined that this case is as frivolous as people are maintaining and I'm not suggesting it is because I don't know yet, but if it ultimately is determined, then you are going to bear the significant cost of this litigation."

Exhibit D, Page 22, lines 10-21

Despite the Court's December 5, 2002 ruling requiring plaintiff to turn over the tax return information and the Court's August 28, 2002 Order requiring production of corporate documents by March of 2003, plaintiff still had not complied with either Order. On March 6, 2003, the Court ordered that plaintiff supply "all documents responsive to the original demand, including tax returns for the years covered in the Complaint, within 14 days." Exhibit E.

On March 25, 2003, defendant wrote to advise the Court that plaintiff had flouted the March 6, 2003 Order, and by derivation continued to be in violation of the December 5, 2002 and August 27, 2002 Orders, by failing to provide documents, as required, by the March 20th deadline. Exhibit F.

3

On May 2, 2003, the Court was forced to order the plaintiff to send a copy of his deposition errata sheet and "supplemental" document discovery because plaintiff was still not in compliance with the Court's discovery orders. The May 2, 2003 Order also set a date for the bringing of sanctions motions. Exhibit G.

Plaintiff's reaction to the threat of sanctions was to file for bankruptcy in order to halt the proceedings in this case. See, Exhibit I, page 6, line 1-page 7, line 17. His bankruptcy also sought to stay enforcement of a judgment rendered in a related case in Alabama.

On June 25, 2003, Robert L. Folks wrote to this Court to advise that the Bankruptcy Judge, the Hon. Stan Bernstein, had dismissed plaintiff's bankruptcy filing *sui sponte* and had observed on the record that he believed Mr. Novak had filed the petition in bad faith and that Mr. Novak was using the courts improperly. Exhibit H.

On July 18, 2003, the transcript of the bankruptcy hearing referred to in the Folks' letter was forwarded to this Court. Exhibit I

Judge Bernstein observed:

> "I am dismissing your case for two reasons.
>
> One, there is an open Chapter 11 case, based upon the appeal before Judge Gershon.
>
> Two, based upon my review of the pleadings, this is not a case that can lead to the confirmation of a feasible plain. I view this as a case filed in bad faith, because you are seeking to use this court to overturn orders of the Alabama State Court."
>
> Exhibit 1, page 15, lines 9-18

Things became so heated that Judge Bernstein was forced to ask his courtroom clerk to call the U.S. Marshall's. Exhibit I, page 17, lines 6-7.

4

Thereafter, on October 30, 2003, this Court issued an Order awarding sanctions in the form of the cost of defense counsel's appearance at the October 30, 2003 Status Conference due to plaintiff's non-appearance. Exhibit J. That Order was subsequently reversed because plaintiff claimed confusion. However, defendant bore the expense, not only of the fruitless court appearance, but also of the preparation of the Affidavit of Actual Services.

On December 12, 2003, the Court issued an Order in response to defendant's Motion for Sanctions. The Court found:

> "In reviewing the record before it, the court must agree with the defendants that the pro se plaintiff, Robert Novak, willfully avoids giving information and does not answer simple questions."
>
> Exhibit K.

The Court issued a preclusion order with respect to "any information he [the plaintiff] failed to disclose regarding the real party in interest."

On January 5, 2004, at the Court's direction, defendant prepared and filed a "Statement of Outstanding Discovery and Anticipated Motions". Exhibit L.

This document was the foundation for all subsequent written discovery requests by defendants. The subject matters for which defendant would seek discovery were, therefore, known to plaintiff since 2004.

On September 19, 2008, this Court issued a scheduling order that set May 1, 2009 for the completion of all discovery. Exhibit M.

On March 27, 2009, defendant served a Document Demand on plaintiff. Exhibit N. Pursuant to Rule 34(b)(2)(a) of the Federal Rules of Civil Procedure, plaintiff's time to answer or object expired on April 24, 2009. To this day, plaintiff has made no response whatsoever to that demand.

On April 21, 2009, defendants served Interrogatories, Requests for Admissions, and a Request for Documents Related to Medical Records (or in the alternative Medical Authorizations, a blank sample of which was included in the request). Exhibit O. Pursuant to Rule 34(b)(2)(a) of the Federal Rules of Civil Procedure, the time to answer or object to the Interrogatories and Medical Records Requests expired on May 20, 2009. The time to answer or object to the Request for Admissions expired on May 4, 2009. To this day plaintiff has made no response whatsoever to any of these discovery requests.

On April 30, 2009, plaintiff faxed an unsigned document styled "Plaintiff's initial Disclosures pursuant to Fed. R. Civ. P 26(a)(1). For some inexplicable reason, the unsigned document was backdated to October 30, 2008. See, third and fourth pages of Exhibit P.

Under Rule 26(g)(2), an unsigned discovery request, response or objection may be stricken by the court unless a signature is promptly supplied after the omission is called to the offending party's attention.

On May 7, 2009, I notified Mr. Novak of this and other defects, such as manner of service, with his document. Exhibit P. To this day, plaintiff has failed and refused to supply a signed Initial Disclosure.

Exhibit P, the document styled as initial disclosure fails to meet even the most basic requirements of initial disclosure.

The documents list only Robert Novak as an individual who may possess discoverable information, yet in a transcendental display of chutzpa plaintiff then went on to reserve the right "to call at trial or for deposition any or different witness".

Similar defects in the document relating to documentary exhibits and other matters are detailed in the May 7, 2009 letter sent by defense counsel to plaintiff notifying plaintiff of the signature deficiency. See, Exhibit P.

Without response to ANY of defendant's written discovery requests, or even a list of possible witnesses, defendants were stopped, stymied and frustrated in any attempt at deposition preparation.

Under FRCP Rule 30(d), a deposition is presumed to be a single seven hour day unless a court orders otherwise. Defendant could not afford to waste that day on some vague line of questioning without the benefit of pre-deposition document discovery.

## POINT I

Rule 37(b) of the Federal Rules of Civil Procedure provides for sanctions upon a party who "fails to obey an order to provide or permit discovery". The Court has repeatedly and patiently instructed plaintiff about his discovery obligations and about the consequences of his repeated failures to meet those obligations. Whether those instructions rise to the level of unwritten orders is for the Court to assert, knowing its own intent at the time. Both written orders as well as unwritten orders from the bench can serve as the predicate order for purposes of Rule 37(b). See, Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp., 602 F.2d 1062 (2nd Circuit 1979).

In Societe Internationale Pour Participations Industrielles et Commerciales S.A. v. Rogers, a case where a party was found by the court to have tried valiantly to produce demanded documents, but was blocked from doing so by Swiss banking secrecy laws, the Supreme Court held that Rule 37 should not be used to suggest dismissal if the failure to comply with a pre-trial production order was due to "inability". However, dismissal

would be warranted if such non-compliance was due to "willfulness", "bad faith" or "any fault of [the non complying party]". 357 U.S. 197, 212 (1958). Here plaintiff has repeatedly demonstrated willfulness and has not interposed any excuse or explanation for his constant and continuing discovery failures that would suggest that plaintiff is not at fault. Dismissal of plaintiff's action is clearly warranted under <u>Societe Internationale</u>.

In <u>Lagrande v. Adecco</u>, a *pro se* litigant failed to serve mandatory disclosure, he was admonished by the court to provide such disclosure and failed to do so. The court treated the prior verbal admonitions as unwritten orders. As in the instant case, the court in <u>Lagrande</u> repeatedly advised the *pro se* litigant that failure to comply with the Federal Rules of Civil Procedure could result in dismissal of the case. 233 F.R.D. 253, 255 (N.D.N.Y. 2005)

The Lagrande court, in imposing sanctions, offered a multipart test of factors the court might consider:

1) The history of the party's failure to comply with court orders

2) whether the party violating the order was given ample time to respond

3) the effectiveness of alternative sanctions

4) whether the non-complying party was warned and given the opportunity to argue the impending sanctions

5) the prejudice to the adversary caused by the failure to comply

6) whether the document at issue would normally be readily obtainable

7) the extent of the party's personal responsibility

<u>Id</u> at 257.

### History of Failure To Comply With Prior Order

As this Court is well aware, plaintiff Novak has repeatedly defied this Court's orders. Most recently he failed to meet the May 1, 2009 deadline for completion of discovery contained in the September 19, 2008 scheduling order.

The plaintiff's repeated failures have already led to the two previous sanction orders dated December 12, 2003 and August 8, 2003 (Exhibit K), although this court later relented on the August 8, 2003 order.

Plaintiff's scofflaw status with respect to the FRCP and especially with respect to his disclosure obligation are amply established and documented. See, Exhibits appended to affirmation of Cynthia A. Kouril in support of the instant motion.

### Whether The Party Violating The Order Was Given Ample Time To Respond

At defendant's request, a status conference was called on May 19, 2009 to discuss plaintiff's non-compliance. More than two months have elapsed since that time and not one iota of production has come from plaintiff. The statutory deadlines for the various discovery devices expired on:

1) April 24, 2009 – last day for plaintiff to respond to March 27, 2009 Document Demands

2) May 4, 2009 – last day for plaintiff to respond to April 21, 2009 Request for Admissions

3) May 20, 2009 – last day for plaintiff to respond to April 21, 2009 Document Demand

4) May 20, 2009 – last day for plaintiff to respond to April 21, 2009 Interrogatories

It is now August 2009, to say that plaintiff has had ample time to respond is a gross understatement.

### The Effectiveness Of Alternative Sanctions

This Court could issue an order/report to the District Court recommending dismissal of plaintiff's Complaint. Alternatively, this Court could issue a conditional order of preclusion. Since defendant's pending discovery requests go to every issue on which plaintiff bears the burden of proof, failure to provide discovery on these issues should, in fairness, result in preclusion on these issues. Should plaintiff continue to fail to produce evidence on which he bears the burden of proof, issue preclusion would then make a subsequent Summary Judgment Motion a simple procedural matter.

This case is now in its eighth year and defendants still have not even received adequate <u>automatic</u> disclosure and have received zero response to our disclosure demands relating to the allegations in the Complaint.

### Whether the Non-Complying Party Was Warned and Given the Opportunity to Argue Impending Sanctions

At almost every conference before this Court, Your Honor has admonished and instructed plaintiff about his obligations under the FRCP and with respect to his discovery obligations. Additionally, you have specifically included language in your orders instructing plaintiff about his obligations. He has been amply and repeatedly warned by the court.

The plaintiff will have opportunity to argue against sanctions in his opposition to this motion.

## Prejudice to the Case by Plaintiff's Failure to Comply

This is now the Third Motion to Compel Discovery made in this case. This Court has already ordered sanctions on two occasions; preclusion in an order dated December 12, 2003 and costs in an order dated August 8, 2003.[1]

The Court may recall that defendant's counterclaim in this suit is that plaintiff's sole purpose in bringing this suit is to harass and intimidate defendant by forcing a one man business to expend as much money as possible defending this frivolous suit. The plight of Mark Rosenstein and Active Window Productions, Inc. then serves as a cautionary tale for any other consumer who might dare to criticize Pets Warehouse or Mr. Novak and to any passive webhost such as Active Window who permits such critical comments to sit on its servers.

In a harassment and intimidation situation such as this, it does not matter to plaintiff if he wins or loses on the merits, he "wins" by keeping the case going as long as possible on motions that should never have been necessary in the first place if plaintiff had performed his obligations in good faith.

## Whether the Documents at Issue
## Would be Readily Obtainable

Plaintiff has promulgated no objections to the defendant's document demands, contending that the documents are unobtainable or even difficult to obtain.[2] In fact, plaintiff has proffered NO RESPONSE WHATSOEVER to defendant's Document Demands served March 27, 2009, request for Admissions served April 21, 2009,

---

[1] The costs were later rescinded, resulting in the ironic circumstance that defendant was caused to expend more money for attorney time related to preparation of the affidavit of costs, thereby further prejudicing defendant.

[2] Plaintiff did offer such an excuse with respect to certain financial documents requested during the "expedited discovery" or the "real party in issue" phase. This Court found plaintiff's excuses to be not credible and issued a preclusion order as to those matters.

Document Demand/Request for Medical Authorization served April 21, 2009, and Interrogatories served April 21, 2009.

### The Extent of the Party's Personal Responsibility

Robert Novak is suing in his own name, as an individual. The documents at issue are his. He is appearing *pro se*, this is not a question of same failure on the part of his lawyer. The ONLY person who bears responsibility for plaintiff's utter failure to respond is plaintiff.

### POINT II

### This Court Has Inherent Authority to Impose Sanctions Even in the Absence of a Discovery Order

"Courts have always had the inherent power to manage their own proceedings and to control the conduct of those who appear before them, and when a party acts in 'bad faith, vexatiously, wantonly or for oppressive reasons' the courts may exercise their discretion in fashioning a remedy. Chambers v. Nasco, 501 U.S. 32, 45-46: Even in the absence of a discovery order, a court may impose sanctions for misconduct during discovery through its inherent power to manage its affairs." LaGrande, supra at 257-58, internal citations truncated, and relying on, Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 136 (2nd Cir 2002).

Although the defendant has failed to meet the May 1st deadline imposed by this Court's September 19, 2008 Scheduling Order in that we have not taken deposition of plaintiff's witnesses, this failure is not of defendant's making. However, in view of the plaintiff's refusal to even provide the names of witnesses or any of the relevant documents needed to prepare questions for those witnesses, defendant's actions to progress this case have been utterly stymied by plaintiff's flagrant discovery abuses. It

would be impossible to depose plaintiff's witnesses because we do not know who they might be. It is impossible to depose Mr. Novak on the merits because we have not received any of the relevant documents going to the merits of his allegations.

In short, plaintiff's scofflaw behavior has made a mockery of conventional discovery practice and has cost defendant thousands and thousands of dollars in otherwise unnecessary time.

## CONCLUSION

This case must be brought to resolution. Plaintiff cannot be allowed to continue to "game" the system to drive up the costs to defendant's small business.

Remember, even plaintiff does not contend the defendant make defamatory statements about plaintiff's business. Active Window is in this case because statements made by others are stored on defendant's servers and because the website's list-serve in question is an "unmoderated" list, defendant refused to remove the statements of others.[3] Mark Rosenstein does not exercise editorial control over the contents of the list-serve at issue.

WHEREFORE, defendant respectfully urges this Court to issue a conditional Order of Preclusion and/or a report to the District Court urging the sanction of dismissal of the action.

Dated: Melville, New York
August 11, 2009

Cynthia A. Kouril (CAK-4899)

---

[3] Which would deprive him of protection he enjoys under the Communications Decency Act.